IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE E. HUGHES, | : | CIVIL ACTION NO. **4:CV-05-2381** |
| | : | |
| Plaintiff, | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Diane E. Hughes, is seeking review of the decision of the Commissioner of Social Security (Commissioner) that denied her claim for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (Act). 42 U.S.C. § § 401-433.

## I. PROCEDURAL HISTORY.

The Plaintiff protectively filed an application for DIB on October 7, 2003, alleging disability since December 31, 1988, due to post traumatic stress disorder (PTSD), irritable bowel syndrome (IBS), and an affective disorder. (R. 27, 46, 48). The state agency denied her claim (R. 54). The Plaintiff filed a timely request for a hearing (R. 58) and a hearing was held before an Administrative Law Judge (ALJ) on May 4, 2005. (R. 31). At the hearing, the Plaintiff, represented by counsel, testified, and a vocational expert testified. (R. 31). The Plaintiff was denied benefits pursuant to the ALJ's decision of March 25, 2005. (R. 27–30).

On July 8, 2005, the Plaintiff requested review of the ALJ's decision by the Appeals Council. (R. 14-15).  Said request was denied on September 19, 2005 (R. 7-11), thereby making the ALJ's decision the "final decision" of the Commissioner.  42 U.S.C. § 405(g) (1995).  The ALJ's decision is the subject of this appeal.

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions.  (Docs.  7 and 8).

## II. STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999).   It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a

specific job vacancy exists for him, or whether he would be hired if he
applied for work.  For purposes of the preceding sentence (with
respect to any individual), "work which exists in the national economy"
means work which exists in significant numbers either in the
region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability

benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir.

1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the

sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

The first step of the process requires the Plaintiff to establish that she has not engaged in

"substantial gainful activity."  See 20 C.F.R. §§ 404.1520(b), 416.920(b) (1995).  The second step

involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R.

§§ 404.1520(c),416.920(c).  The Commissioner must then determine whether the Plaintiff's

impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P,

Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment,

the Commissioner must continue with the sequential evaluation process and consider whether the

Plaintiff establishes that she is unable to perform her past relevant work.  *See* 20 C.F.R.

§§ 404.1520(e), 416.920(e).  The Plaintiff bears the burden of demonstrating an inability to return

to her past relevant work.  *Plummer*, 186 F.3d at 428.  Then the burden of proceeding shifts to the

Commissioner to demonstrate that other jobs exist in significant numbers in the national economy

that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors.  *Id.*

The ALJ proceeded through the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 30).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since her alleged onset date.  *Id.*  At step two, the ALJ concluded from the medical evidence that Plaintiff's impairments were not severe within the meaning of the Regulations and did not place significant restrictions on her ability to perform basic work-related activities.  (R. 28, 30).  Because the ALJ found that the Plaintiff did not have a severe impairment, a finding of not disabled is appropriate.  *See Smith v. Barnhart*, 2003 WL 22862663 at *1. (N.D.Cal. Dec. 2, 2003).  Because there was a finding of not disabled, review does not proceed any further.  20 C.F.R. §§ 404.1520, 416.920 (1995).

In reaching his conclusion, the ALJ evaluated Plaintiff's symptoms under 20 C.F.R. § 404.1529 of Social Security Regulation No. 4 and Social Security Ruling 96-7p.  (R. 29). The ALJ considered Plaintiff's allegations of her inability to work because of subjective symptoms and her prior work record.  (R. 29).  The ALJ found that Plaintiff did not depict a condition which would place a significant restriction on her ability to perform basic work-related functions as of, or prior to, December 31, 1993 (Plaintiff's date of last insured for DIB).  (R. 29).  Finally, the ALJ found that because the Plaintiff did not have a severe impairment, she could perform basic work-related activities.  (R. 29).  Consequently, the ALJ found that the Plaintiff was not disabled within the

4

meaning of the Social Security Act.  (R. 29, 30).

## IV.  DISCUSSION.

### A. Background.

The Plaintiff was thirty-three years old at the alleged onset date of disability, making her a "younger" individual under the Regulations.  (R. 34).  20 C.F.R. § 416.963(c) (2004).  She has a high school education and worked as an office manager and/or secretary until November 1988.  (R. 35).  She alleged a disability onset date of December 31, 1988.  (R. 35).  Plaintiff last met the disability insurance (DLI) requirements on December 31, 1993.  (R. 27).  Thus, in order to receive DIB, the Plaintiff had to be under a disability on or before December 31, 1993.  The vocational expert testified that Plaintiff's work was classified as clerical work and constituted skilled work in the light duty physical exertion level.  (R. 20).

### 1.  History of Plaintiff's post traumatic stress disorder and irritable bowel syndrome.

Plaintiff testified that she experienced a traumatic event in 1980 when her brother-in-law murdered her sister and a friend.  (R. 39).  Plaintiff was the primary witness at the murder trial in 1981.  (R. 39).  Plaintiff also testified that her brother-in-law stalked her, threatened and attacked her, and attempted to rape her.  (R. 39.)  She was in shock after the incident and could not speak nor understand what people were saying to her.  (R. 39).  However, she did return to work and continued to work for several years until 1988.

Plaintiff testified that she was not receiving psychological treatment at that time, but her general practitioner tried to get her help in 1991.  (R. 38).  She was sent to Scranton Counseling Center but testified that she could not afford their services.  (R. 38-39).  A psychological evaluation

receipt dated September 1993 from Scranton Counseling Center was produced.   (R. 154). Scranton Counseling Center's records indicate there is "no record of treatment at [their] facility." (R. 115, 116).

In 1993 and 1994, Plaintiff went to Family Service of Lackawanna County for eight therapy sessions conducted by therapist Maripat O'Donnell.  (R. 296-304).  Plaintiff's main complaints to the therapist were problems with her husband, house problems, and caring for her sick grandmother. (R. 299, 304).  In June 2004, Maripat O'Donnell's notes indicate that Plaintiff was "merely functioning," and she opined that Plaintiff suffered from some post-traumatic stress.  (R. 297, 304).     At the ALJ hearing, Plaintiff testified that she had suicidal thoughts since the 1980's. However, the therapist's intake assessment of Plaintiff states that she "denied any suicidal thoughts." (R. 43, 303).  The intake assessment also states that Plaintiff reported she was unemployed and "a housewife *at her choice.*"  (R. 303) (emphasis added).   Other notes of the therapist indicate that Plaintiff had a job in the past, but she "currently *doesn't wish to work.*" (R. 297) (emphasis added). Plaintiff's therapy sessions at Family Service of Lackawanna County were terminated jointly by the therapist and client in December 1994. (R. 296).  The closing notes state that the patient's needs were met and there was moderate improvement. (R. 296).

From 1985 to 1991, Plaintiff made various complaints to treating doctors.  (R. 49, 82).  She complained of headaches, backaches, rashes, diarrhea, throat troubles, stress, and dizziness.  (R. 49, 82).  Plaintiff produced no medical records to support these complaints.  Plaintiff indicated that the doctors to whom she complained were Robert Staropoli, D.C., J. Ingrassia, M.D., Robert Mancuso, D.C., Dr. Mossi, Mark Gabriel, D.C., and S.K. Plante, M.D. (R. 42, 148-150).  She stated

that due to the time lapse, she was unable to locate the doctors and records. (R. 42, 148-150).

In 1993 and 1994, Plaintiff treated with Dr. Ingrassia and in 1991 with Dr. Plante (R. 42, 148). However, Plaintiff produced no medical evidence from either doctor regarding her PTSD. (R. 42). Plaintiff noted that she no longer has records from Dr. Ingrassia and she "cannot remember what town he was in." (R. 150). Plaintiff did produce records from Dr. Plante including chart notes, laboratory reports, and radiology reports. She produced a receipt from a 1993 office visit and a note she wrote about the antispasmodic medication Dr. Plante prescribed for her IBS. (R. 403, 404). The ALJ noted that Plaintiff treated with Dr. Plante in 1999 for a vaginal problem. (R. 315-362). Resulting tests were normal and came back negative for cervical cancer, infection and inflammation. (R. 322, 324, 325, 328, 332).

These records do not indicate that Plaintiff suffered from any disabilities during the time in question. Nor do they indicate that Plaintiff was limited in her work ability. Thus, she cannot prove her medical state when treating with both Drs. Ingrassia and Plante.

In 1998, Plaintiff's brother-in-law, the man convicted of murder, was granted a retrial which occurred in 2001. Plaintiff again experienced trauma associated with the trial. On January 24, 2001, she was admitted to Community Medical Center (CMC) in Scranton for treatment of PTSD. Plaintiff stayed in the hospital for less than twenty-four hours, stating that the psychiatric unit was not the right environment for her. (R. 172). While at CMC, Sanjay Chandragiri, M.D., evaluated Plaintiff and stated that she came in with severe symptoms of PTSD, but that she "definitely did not have suicidal thoughts or intentions." (R. 172). Dr. Changradiri also noted that Plaintiff said she was "doing well for several years until the past two years when she had to relive [the retrial]." (R. 173).

7

Dr. Chandragiri had "no grounds to hold the patient against her will" and released her. (R. 172). Upon release, her Global Assessment of Functioning (GAF) score was 40.[1]

Plaintiff was referred to a licensed clinical social worker, Ann Marie Kopec, and began treating with her in 2001 for PTSD. (R. 313-314). Ms. Kopec stated, in her opinion, that Plaintiff "cannot function in the work setting." (R. 314). Ms. Kopec also opined that Plaintiff suffered from "Post Traumatic Stress Disorder and Major Depression since the early 1980's to the present." (R. 370). This opinion was not submitted until July 7, 2005, after the ALJ hearing, when the Appeals Council review was requested. (R. 370). Because Ms. Kopec is not an "acceptable medical source," the ALJ was not required to give her opinion controlling weight. Thus, he did not give her opinion controlling weight. *See* 20 C.F.R. §§ 404.1513, 416.913 (identifying acceptable medical sources as only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). The opinion of Ms. Kopec, a social worker, was therefore not entitled to controlling weight.

Further, Plaintiff did not begin treating with Ms. Kopec until 2001, more than seven years after her insured status expired, *i.e.*, December 31, 1993. No treating physician's notes were submitted to accompany Ms. Kopec's report. (R. 8).

Plaintiff began treating with psychologist A.C. Patel, M.D., in 2001. (R. 269). At that time, Plaintiff again denied any suicide attempts. (R. 269). All of Dr. Patel's progress notes from 2001 to

---

[1] A GAF score of 40 indicates some impairment in reality testing or communication (e.g., speech is sometimes illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). American Psychiatric Association, <u>Diagnostic & Statistical Manual of Mental Disorders</u>, 34 (4th ed. text revision, 2000).

2003 indicate that Plaintiff denied any suicidal thoughts or ideation.  (R. 192-206).  Dr. Patel

administered a psychiatric evaluation in January 2001.  The results of the test indicated a GAF score

of 55-60.[2]  Dr. Patel did diagnose Plaintiff with depression and PTSD.  Again, this diagnosis was in

2001, more than seven years after the date last insured.  (R. 270).  Dr. Patel made no findings that

Plaintiff suffered from PTSD on or before December 31, 1993.

Plaintiff also testified that as a result of the murders in 1980, she experienced irritable bowel

syndrome (IBS) resulting in constant diarrhea.  She stated that she suffered from IBS before the 1980

murders; however, subsequent to the murders it got worse.  Plaintiff complained to her treating

doctors about her stomach pains.  (R. 49).  Plaintiff testified that at times she was late for work

because of the IBS.  She also had to interrupt meetings and phone calls to get to the bathroom.  (R.

48).  Plaintiff was not treated for her IBS until 1993, when she was prescribed Lebson, an

antispasmodic, by Dr. Plante.  Plaintiff stated that Dr. Plante gave her samples of Lebson prior to

December 1993.  (R. 46, 47).  She also used over-the-counter medications to treat her IBS; however,

they did not help.  (R. 47).  Plaintiff submitted a note to the Appeals Council stating that she was also

prescribed Lorazepam in 1993 by Dr. Plante after being diagnosed with gastroenteritis.[3]  The

Lorazepam was used to treat nausea and anxiety.  (R. 404).  As indicated above, due to the lapse

in time, medical records from Dr. Plante are not available.

---

[2]  A GAF score between 55 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupations, or school functioning (e.g., few friends, conflicts with peers or co-workers).  DSM-IV at 34.

[3]  Gastroenteritis is defined as "inflammation of the mucous membrane of both stomach and intestine." Stedman's Medical Dictionary, 732 (27th Ed. 2000).

Based on the foregoing discussion, we find that there is substantial evidence to suggest the ALJ's finding that the Plaintiff's IBS and PTSD were not severe impairments.

### 2.  History of Plaintiff's affective disorder.

Plaintiff further alleges that her disability stems from an affective disorder.  On January 5, 2005, J.J. Kowalski, M.D., a state agency psychologist, reviewed the medical evidence and assessed Plaintiff's medical state up to December 31, 1993.  He found Plaintiff had anxiety-related disorders, mood disturbances, major depression by history, and recurrent and intrusive recollections of a traumatic experience.  (R. 207, 210, 212).  Dr. Kowalski then concluded that Plaintiff's medical impairment(s) were not severe on or before December 31, 1993.  (R. 207).  He noted that her allegations were "partially credible, but do not significantly limit functioning." (R. 219).  The Plaintiff argues that the ALJ erred in finding that she did not meet the requirements of Listing 12.04 (Affective Disorders).  The Supreme Court has held that a claimant must prove that her condition meets every criteria in a listing before she can be considered disabled *per se*.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  A claimant is disabled *per se* under Listing 12.04 when she either satisfies the requirements of both 12.04(A) and 12.04(B), or of 12.04(C).

Here, Plaintiff alleges she exhibits some of the symptoms listed in 12.04(A)[4].  Social worker Ann Marie Kopec stated that Plaintiff exhibits some of the symptoms in 12.04(A), yet no medical evidence was presented to accompany this opinion.  (R. 313-314).  However, Dr. Kowalski's report found that "[a] medically determinable impairment is present that does not precisely satisfy the

---

[4] The Plaintiff contends that she has "medically documented persistence, either continuous or intermittent," of "pervasive loss of interest in almost all activities," "sleep disturbance," "decreased energy," "feelings of guilt or worthlessness," "difficulty concentrating or thinking," or "thoughts of suicide."  Listing 12.04 (A)(1)(a),(c),(e),(f),(g), or (h).

diagnostic criteria" of Listing 12.04(A).  (R. 210).  Plaintiff presented no medical evidence to counter

Dr. Kowalski's findings.

Listing 12.04(B) requires that the symptoms described in (A) result in at least two of the

following:

> 1. Marked restriction of activities of daily living;
>
> 2. Marked difficulties in maintaining social functioning;
>
> 3. Marked difficulties in concentration, persistence, or pace; or
>
> 4. Repeated episodes of decompensation, each of extended
>
> duration.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04.  Dr. Kowalski found there were mild restrictions

of activities of daily living; mild difficulty in maintaining social functioning; mild difficulty in

maintaining concentration, persistence, or pace; and no episodes of decompensation.  (R. 217).

The Plaintiff does not point to anything in the record contending that she meets the

requirements of Listing 12.04(C), which are:

> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that resulted in such marginal adjustment
>
> that even a minimal increase in mental demands or change in the
>
> environment would be predicted to cause the individual to
>
> decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly

supportive living arrangement, with an indication of continued need for

such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.04(C).  Dr. Kowalski specifically found that the

Plaintiff's mental impairments were not severe and did not meet Listing 12.04 (C).  (R. 218).  The

Plaintiff offered no expert medical opinion to counter Dr. Kowalski's findings.  We find that there

is substantial evidence to support the ALJ's conclusion that the Plaintiff has not met the requirements

for Listing 12.04 Affective Disorders.

We must stress that it is the claimant's burden to prove that her condition meets or equals

the specific clinical requirements of a listed impairment such as Listing 12.04 before she can be

considered to be disabled *per se* without consideration of vocational factors, such as age, education,

and work experience.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Brown v. Bowen*, 845 F.2d

1211, 1213 (3d Cir. 1988) (citations omitted).  To be entitled to disability benefits, a claimant must

show that all, not just some, of the criteria for a listing are met.  *Zebley*, 493 U.S. at 530.  The

Commissioner must make the legal determination as to whether an impairment meets or equals a

listing. *See* 20 C.F.R. § 404.1527(e)(1) and (2).

Although the ALJ's decision did not go step-by-step through the requirements of Listing

12.04, substantial evidence supports the ALJ's finding that the Plaintiff "does not have a severe

impairment, or combination of impairments, and is therefore, is not disabled." (R. 29).

### B. Whether the ALJ erred in finding the Plaintiff not disabled.

The Plaintiff argues that the ALJ erred in failing to find her disabled based on her mental

impairments, as they existed on or prior to December 31, 1993, and that the ALJ erred in failing to

find that these impairments placed a significant restriction on her ability to perform basic work-related functions.  After carefully considering all of the evidence, the ALJ found that the Plaintiff did not have a severe impairment on or before December 31, 1993, the date last insured.

Our review of medical records from 1991 to 2004, summarized above, reveals substantial evidence to support the ALJ's ultimate conclusion about the principal thrust of the evidence:  that the limitations the Plaintiff alleged at her 2005 hearing are not borne out by her medical records. The ALJ's decision that the Plaintiff is not disabled under the Act boils down to his finding that none of her mental impairments, as they existed on or prior to December 31, 1993, placed a significant restriction on her ability to perform basic work-related functions.  (R. 28).

An ALJ must weigh "subjective allegations . . . against objective medical evidence and other relevant information bearing on the issue of credibility."  *Adams v. Barnhart,* 2005 WL 1313456, at *9 (E.D.P.A. May 31, 2005).  Here, the ALJ did that.  The ALJ noted that the Plaintiff complained of depression, poor concentration, anxiety, nightmares, frequent diarrhea, and headaches.  (R. 29). He then found that these complaints did not establish a severe impairment.  (R. 29).

The ALJ was not required to give controlling weight to Ms. Kopec's retrospective opinion that Plaintiff was disabled as of 1993.  Ms. Kopec did not begin treating Plaintiff until January 2001, more than seven years after her DLI, but opined that Plaintiff could not function in the work setting.  (R. 314).  Ms. Kopec also noted that, in her opinion, Plaintiff suffered from PTSD.  (R. 370).  Because Ms. Kopec only began treating Plaintiff in 2001, after both her alleged disability onset date and DLI, her opinion does not reflect the kind of "expert judgment based on a continuing observation of the patient's condition over a prolonged period of time" that the Third Circuit considers important in

assigning weight to treating physicians' opinions. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987). Here, Ms. Kopec is not even a treating physician. She is a licensed clinical social worker, which is not an acceptable medical source. As a consequence, Ms. Kopec's opinion is entitled to less weight. *See* 20 C.F.R. 404.1527(2)(ii), 416.927(2)(ii) (stating that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Ms. Kopec did not even submit notes of a treating physician to accompany her report. The ultimate responsibility for determining whether a claimant is disabled is left to the Commissioner; a treating physician's opinion on this ultimate issue is not granted any special weight. 20 C.F.R. §§ 404.1527(e)(3).

Plaintiff introduced into evidence a letter dated November 7, 1988 from a previous employer. Plaintiff worked for this employer's firm from 1986 to 1988, a time period during which she claimed to be suffering from severe depression and PTSD. The letter describes Plaintiff as "extremely reliable, honest, cooperative, [and] pleasant." (R. 402). Regarding this same time period, Plaintiff testified that her work was deteriorating and she had difficulty working. (R. 39, 48). The letter goes on to state that Plaintiff left work because she moved out of the area. (R. 402). Conversely, Plaintiff testified that she left her job in 1988 because she "just couldn't go anymore." (R. 39).

Plaintiff introduced various other letters of recommendation from previous employers dated from 1981 to 1985. (R. 395-401). All of the letters indicate that Plaintiff was reliable , competent,

14

and had a positive attitude.  (R. 395-401).  During that time, Plaintiff alleged that she was so depressed she was entitled to DIB.  The ALJ found that Plaintiff was not disabled and not entitled to DIB.  These letters support the ALJ's decision that Plaintiff was not disabled on or before December 31, 1993.

It should be noted that, in cases of mental disorders, the Third Circuit has cautioned against the substitution of lay opinion for medical opinion.  *Morales v. Apfel*, 225 F.3d 310, 319  (3d Cir. 2000).  Here, however, the ALJ did not substitute his lay opinion.  Instead, he found Dr. Patel's opinion that the Plaintiff suffered from major depression and PTSD did not conclude that these symptoms existed prior to the expiration of Plaintiff's insured status.  (R. 28).  The ALJ also relied upon the stated opinion of Dr. Kowalski, the state agency psychiatrist.  The ALJ concluded that Dr. Patel's findings were not entitled to great weight because Dr. Patel did not begin treating with Plaintiff until 2001, and Dr. Patel did not find that Plaintiff's PTSD existed on or before the DLI.  Dr. Patel's progress notes from 2001 to 2004 also state that Plaintiff was "feeling and doing better."  (R. 192-197, 199, 201, 203-206, 294).

Where, as here, an ALJ disregards a medical opinion because the doctor did not opine as to Plaintiff's condition prior to her DLI, the rejection is legitimate.  See *Papp v. Commissioner of Social Security,* 05 Civ. 5695, 2006 WL 1000397 at *17 (S.D.N.Y. April 18, 2006), *citing Keller v. Barnhart,* 01 Civ. 4334, 2002 WL 31778867 at *3 (S.D.N.Y. 2002);  (Claimant "has not sustained his burden of showing that he was disabled prior to December 31, 1989, the date he was last insured for disability insurance benefits.  Although the medical evidence of record shows that [claimant] may currently have severe impairments, this evidence post-dates [claimant's] last

insured date by approximately ten years. There is no evidence regarding treatment from January 1, 1987 to December 31, 1989····· The ALJ properly decided that [claimant] failed to establish the existence of a severe impairment during the relevant period.").

Similarly, Dr. Patel made findings as to Plaintiff's present condition, not her condition prior to December 31, 1993. The ALJ afforded significant weight to Dr. Kowalski's opinions, which concluded that Plaintiff was not under a disability that would significantly limit her functioning. (R. 219). We find there is substantial evidence that the ALJ fulfilled his obligation "to weigh the medical evidence and make choices between conflicting medical evidence." *Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992).

As the Appeals Council noted, "the only evidence of record for the period at issue (December 1988-December 1993) is Exhibit 13F, the treatment notes from Maripat O'Donnell. (R. 8). These brief treatment notes from [Plaintiff's] social worker, while describing [Plaintiff's] mental impairment, do not indicate any work related limitations, nor were they accompanied by treating physician records documenting treatment for the impairment." (R. 8). We agree with the Appeals Council's finding based upon our review of the record.

**C. Whether the ALJ erred in finding that the remainder of the documentary evidence is germane to impairments or conditions existing subsequent to the date last insured.**

The Plaintiff argues the ALJ erred by finding the remainder of the documentary evidence germane to impairments or conditions existing subsequent to the date last insured (DLI). (Doc. 7). The ALJ evaluated all the evidence presented and found that most of the evidence pertained to conditions subsequent to the DLI. (R. 29).

The ALJ noted that in January of 2004, the Plaintiff treated with Sheela Prahalad, M.D., for shoulder pain.  (R. 29).  Dr. Prahalad ordered an MRI of the right shoulder, which resulted in a finding of no evidence of a rotator cuff tear.  (R. 225).

The Plaintiff was required to show that she was disabled as of December 31, 1993 in order to receive DIB.  20 C.F.R. §§ 404.101(a), 131(a).  Plaintiff argues that she presented retrospective medical opinions, medical records and lay statements all corroborating her disability prior to December 31, 1993.  (Doc. 7).

Plaintiff presented the opinion of Ann Marie Kopec, L.C.S.W., S.A.P.  As previously stated, Ms. Kopec is not an "acceptable medical source," and she did not begin treating Plaintiff until 2001.  20 C.F.R. § 404.1513(a).  (R. 313, 370).  Thus, her medical opinion that Plaintiff suffered from major depression and PTSD from the 1980s is not entitled to great weight.  Her opinion may be viewed as a lay statement.

Plaintiff presented the medical opinions of Dr. Patel and Dr. Chandragiri.  However, these opinions were presented in 2001 and diagnosed Plaintiff with PTSD at that time.  There were no medical opinions or findings that Plaintiff suffered from PTSD on or before December 31, 1993.

The therapist records from Plaintiff's 1994 treatment at Family Service of Lackawanna County were presented.  Maripat O'Donnell did believe that Plaintiff was suffering from major depression.  However, this was in 1994, after Plaintiff's DLI.  (R. 296-304).  Further, the therapist nowhere indicated that this mental impairment would limit Plaintiff's work ability.  (R. 8, 294-304).

Several employee performance evaluations were presented to the Appeals Council.  (R. 372-393).  These evaluations praised Plaintiff for being a good employee and performing "above expectations."  (R. 391).  The only negative comment raised was that she should handle telephone calls more authoritatively.  (R. 381).  In 1984, after Plaintiff went through the murder trial, it was noted that she worked harder the previous nine months than ever before.  (R. 393). Plaintiff indicates that during that time period. she was trying harder but not producing as good of a work product.  (R. 372, 393).

The lay opinions of many of Plaintiff's employers were presented to the Appeals Council. All of these letters of recommendation praised Plaintiff for being reliable, credible, and of high character.  (R. 373-402).  These lay opinions do not reflect the notion that Plaintiff suffered from PTSD during the 1980s when she worked for these employers .

Evidence not presented to the ALJ "cannot be used to argue that the ALJ's decision was not supported by 'substantial evidence.'" *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963).  Plaintiff requests an award of a period of disability and disability benefits beginning on or before the DLI; or, in the alternative, Plaintiff requests a remand to the ALJ.  (Doc. 7).  However, remand is not appropriate here.  *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) held that "when a claimant seeks to rely on new evidence that was not before the ALJ, the District Court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ."  Here, the evidence submitted for the first time to the Appeals Council, Ms. Kopec's opinion (submitted July 7, 2005) that Plaintiff suffered from PTSD

18

and major depression since the early 1980's to the present, is not "material."  (R. 370).  Nor has the Plaintiff shown good cause for not presenting it to the ALJ.

Ms. Kopec's opinion regarding Plaintiff's PTSD and the onset date of her conditions is not material for the reasons previously stated.  Namely, Ms. Kopec is not an "acceptable medical source," and she did not being treating Plaintiff until 2001.  The performance evaluations are not material.  They merely indicate that Plaintiff was a good employee and was committed to producing outstanding work.  Similarly, the recommendation letters are not material because they simply state that Plaintiff was hardworking and reliable.  The receipt from the 1993 office visit with Dr. Plante and the note referencing the medication Dr. Plante prescribed to Plaintiff also are not material.  The 1993 office receipt simply shows that Plaintiff saw Dr. Plante on that date.  (R. 403).  The note is written by Plaintiff stating that she was prescribed Lorazepam in 1993 for gastroenteritis.  (R. 404).

Based on the foregoing, we find that substantial evidence supports the ALJ's determination that Plaintiff was not entitled to DIB prior to December 31, 1993.

**V. RECOMMENDATION.**

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal be DENIED.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: December 18, 2006**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE E. HUGHES, | : | CIVIL ACTION NO. **4:CV-05-2381** |
| | : | |
| Plaintiff, | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **December 18, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                        s/ Thomas M. Blewitt
_____          **THOMAS M. BLEWITT**
                                        **United States Magistrate Judge**

**Dated: December 18, 2006**